IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MINNESOTA

| | |
|---|---|
| WFC HOLDINGS CORP., | ) |
| Plaintiff, | ) ) ) |
| v. | ) Civil No. 07-cv-3320-JRT-FLN |
| UNITED STATES OF AMERICA, | ) ) ) |
| Defendant. | ) ) |

### UNITED STATES' OBJECTIONS AND RESPONSES TO PLAINTIFF'S FIRST SET OF INTERROGATORIES TO THE UNITED STATES OF AMERICA

The United States makes these objections and responses to Plaintiff's First Set of Interrogatories to the United States of America.

**General Objections**

1. The United States objects to the Plaintiff's First Set of Interrogatories ("Interrogatories") to the extent that the Interrogatories seek information protected from disclosure by the attorney-client privilege.

2. The United States objects to the Interrogatories to the extent that the Interrogatories seek information protected from disclosure by the work-product doctrine.

3. The United States objects to the Interrogatories to the extent that the Interrogatories seek information protected from disclosure by the deliberative-process privilege.

4. The United States objects to the Plaintiff's instructions to the extent that they require more of the responding party than is required under Rule 33 of the Federal Rules of Civil Procedure. In particular, the United States objects to the instruction number one on the grounds that its purported requirements for each contention interrogatory to, among other things, identify

every fact relevant to Defendant's position or allegation or position, identify each communication relevant to the allegation or position, and identify the legal basis or authority supporting the Defendant's legal position are unduly broad and burdensome. Also, if each of the four subparts contained in instruction number one are applied to each interrogatory seeking a contention, Plaintiff will have exceeded the number of allowable interrogatories, including subparts, allowed under the case management order.

5. The United States objects to Plaintiff's interrogatories to the extent that they purport to require the United States to express, prior to the completion of expert discovery, its positions and the facts it relies on before it completes discovery, including any expert discovery.

6. The United States objects to the interrogatories to the extent that the interrogatories ask the United States to identify a legal basis or authorities in support of a contention, on the grounds that such interrogatories seek information outside the scope of Rule 26(b).

## Specific Objections and Responses

Subject to and without waiving the foregoing general objections, the United States provides the following specific objections and responses.

Interrogatory No. 1. Does Defendant contend that, for federal tax purposes, the Exchange should be treated as something other than a transfer of property in exchange for stock, within the meaning of I.R.C. § 351; and, if so, what reasons and which facts and evidence support an alternative characterization of the Exchange as being more appropriate than a transfer of property in exchange for stock under I.R.C. § 351?

Response to Interrogatory No 1:

*Yes. The United States contends that only part of the Exchange is a Section 351 exchange of property for stock. In substance, the Exchange consisted of (a) the transfer of $425,899,099 worth of government securities to Charter in exchange for the assumption of*

*$425,899,099 worth of contingent liabilities, and (b) the transfer of $4,000,000 worth of government securities to Charter in exchange for $4,000,000 worth of Preferred Stock. Only the second transfer is a Section 351 exchange.*

Interrogatory No. 2. Does Defendant contend that the lease obligations associated with the real estate assets transferred to Charter in the Exchange are not liabilities within the scope of I.R.C. § 357(c)(3)(A) and that Charter's assumption therefore constitutes consideration that should reduce the Transferors' basis in the Preferred Stock pursuant to I.R.C. § 358(a)(1)(A)(ii); and, if so, what reasons and which facts and evidence support this contention?

Response to Interrogatory No. 2:

*Yes. The lease obligations are not liabilities within the scope of Section 357(c)(3)(A) because the text and legislative history of that provision indicate that a liability is within the scope of the section only if payment of the liability would have given rise to a deduction by the transferor absent its assumption or transfer, and the liability is no longer deductible by the transferor because of the assumption or transfer. In this case, deductions associated with the lease obligations remained with the Transferors after the Exchange.*

Interrogatory No. 3: Notwithstanding your response to interrogatory number 2, above, does Defendant otherwise contend that, pursuant to I.R.C. § 358(a)(1)(A)(ii), Transferors' respective bases in the Preferred Stock should be reduced by the amount of real estate liabilities that Charter assumed in the Exchange; and, if so, what reasons and which facts and evidence support this contention?

Response to Interrogatory No. 3:

*Yes. The United States contends that Section 358(d)(1) operates to reduce the Transferors' basis in the Preferred Stock because Charter assumed the contingent liabilities as part of the Exchange. Section 358(d)(2) is inapplicable because the contingent liabilities were not excluded under Section 357(c)(3) and because Section 357(b)(1) applies to the assumption.*

Interrogatory No. 4: For purposes of applying I.R.C. § 358(d)(2), does Defendant contend that I.R.C. § 357(c)(3)(A) applies only to liabilities the payment of which would have been deductible by the Transferors but no longer are as a result of the assumption of those liabilities by Charter; and, if so, what reasons and legal authorities support this contention?

Response to Interrogatory No. 4:

*See the United States' response to Interrogatory No. 2.*

Interrogatory No. 5. Does Defendant contend that the Exchange did not constitute the transfer of assets with which the contingent liabilities are associated; and, if so, what reasons and

- 3 -

which facts and evidence support this contention?

Response to Interrogatory No. 5:

*No.*

Interrogatory No. 6. Does Defendant contend that the Exchange did not constitute the transfer of substantially all of the assets, within the meaning of I.R.C. § 358(h)(2), with which the liabilities assumed by Charter are associated; and, if so, what reasons and which facts and evidence support this contention?

Response to Interrogatory No. 6:

*No. The United States does not contend that Section 358(h)(2) applies to the Exchange, or that the Exchange is encompassed by its meaning, because that provision is inapplicable to assumptions of liabilities occurring before October 18, 1999.*

Interrogatory No. 7. Does Defendant contend that, following the Exchange, Charter was not engaged in the trade or business of managing leased properties; and if so, what reasons and which facts and evidence support this contention?

Response to Interrogatory No. 7:

*Yes. That part of Interrogatory No. 7 that seeks facts and evidence supporting that contention is a contention interrogatory within the meaning of Rule 33 of the Federal Rules of Civil Procedure, and the United States cannot meaningfully respond to the interrogatory until the conclusion of discovery.*

Interrogatory No. 8. For purposes of calculating Plaintiff's capital loss, does Defendant contend that Transferors' adjusted basis in the Preferred Stock was less than $427,849,535; and, if so, what reasons and which facts and evidence support this contention?

Response to Interrogatory No. 8:

*Yes. Under the argument explained in the response to Interrogatory No. 1, the Transferors' basis in the Preferred Stock would be less than $4,000,000, as the Transferors' basis in the government securities transferred as part of the Section 351 exchange was less than $4,000,000. Under the argument explained in response to Interrogatory No. 3, the basis would be $1,950,436, or the Transferors' basis in the government securities ($427,849,535) minus the value of the assumed contingent liabilities ($425,899,099). Finally, under the sham-transaction doctrine, Plaintiff's claimed capital loss would be disallowed regardless of the basis in the Preferred Stock.*

Interrogatory No. 9. If Defendant's answer to interrogatory 8 is in the affirmative, what does Defendant contend was, expressed in U.S. dollars, the Transferors' correct adjusted basis of the Preferred Stock, and what reasons and which facts and evidence support this contention?

Response to Interrogatory No. 9:

*See the United States' response to Interrogatory No. 8.*

Interrogatory No. 10. Does Defendant contend that, for purposes of I.R.C. § 351, the total amount of the contingent liabilities assumed by Charter should be considered as money received by the Transferors due to the application of I.R.C. § 357(b)(1); and, if so, what reasons and which facts and evidence related to the Exchange support this contention?

Response to Interrogatory No. 10:

*Yes. Section 357(b)(1) applies to the Exchange because Plaintiff's principal purpose for the Exchange was to avoid federal income tax on the exchange and was not a bona fide business purpose. The Exchange was part of the Transaction for which Plaintiff had no legitimate non-tax business purpose.*

Interrogatory No. 11. Does Defendant contend that WFC's non-tax business objectives, rather than an objective to achieve tax benefits, must be the primary motivating purpose for the Transaction to justify respecting the Federal income tax consequences that Plaintiff has claimed as a result of the Transaction; and, if so, what reasons and legal authorities support this contention?

Response to Interrogatory No. 11:

*The United States contends that Plaintiff did not have any legitimate, non-tax, subjective business purposes for the Transaction. The Transaction was designed, marketed, sold, and implemented as an abusive tax shelter. The Transaction was a substantive sham and Plaintiff is not entitled to any federal income tax deductions arising from it. See, e.g., IES Industries v. United States, 253 F.3d 350 (8th Cir. 2001); Shriver v. Commissioner, 899 F.2d 724 (8th Cir. 1990).*

Interrogatory No. 12. If Defendant's answer to Interrogatory No. 11 is in the affirmative, by what standard and pursuant to what legal authority does Defendant contend that the relative importance of each of WFC's objectives (i.e., tax and non-tax) should be measured?

Response to Interrogatory No. 12:

*Not applicable. To the extent that Interrogatory No. 12 is deemed applicable, see the cases cited in the response to Interrogatory No. 11.*

Interrogatory No. 13. Does Defendant contend that WFC's negotiation and sale of the Preferred Stock to Lehman was not conducted on an arm's-length basis; and, if so, what reasons and which facts and evidence support this contention?

Response to Interrogatory No. 13:

*The United States objects to Interrogatory No. 13 because the meaning of the term "arm's-length basis" is vague.*

Interrogatory No. 14. Does Defendant contend that WFC's arm's-length sale of Preferred Stock to Lehman must have a business purpose separate and apart from a tax purpose, and if so, what reasons and/or administrative or legal authorities support this contention?

Response to Interrogatory No. 14:

*Yes. Courts applying the sham-transaction doctrine to a transaction must consider the transaction as a whole and each of its steps. See, e.g., IES Industries v. United States, 253 F.3d 350, 356 (8th Cir. 2001); Kirchman v. Commissioner, 862 F.2d 1486, 1493-94 (11th Cir. 1989); IRS v. CM Holdings, Inc., 254 B.R. 578, 598 (D. Del. 2000), aff'd, 301 F.3d 96 (3d Cir. 2002).*

Interrogatory No. 15. Does Defendant contend that WFC's sale of Preferred Stock to Lehman lacked a non-tax business purpose; and, if so, what reasons and which facts and evidence support this contention?

Response to Interrogatory No. 15:

*Yes. That part of Interrogatory No. 15 that seeks the facts and evidence supporting such contention is a contention interrogatory within the meaning of Rule 33 of the Federal Rules of Civil Procedure, and the United States cannot meaningfully respond to that part of the interrogatory until the conclusion of discovery.*

Interrogatory No. 16. Does Defendant contend that the Transaction as a whole must have economic substance to justify respecting the claimed Federal income tax consequences resulting from the Transaction; and, if so, what reasoning and legal authorities support this contention?

Response to Interrogatory No. 16:

*Yes. See the United States' response to Interrogatory No. 14. See also Black & Decker Corp. v. United States, 436 F.3d 431, 441-42 (4th Cir. 2006).*

Interrogatory No. 17. Alternatively, does Defendant contend that (i) the Exchange and (ii) WFC's sale of Preferred Stock to Lehman must each have economic substance to justify respecting the claimed Federal income tax consequences resulting from the Transaction;

- 6 -

and, if so, what reasoning and legal authorities support this contention?

Response to Interrogatory No. 17:

*Yes. See the United States' response to Interrogatory No. 14.*

Interrogatory No. 18. Does Defendant contend that WFC's sale of Preferred Stock to Lehman, rather than the Exchange, is the part of the Transaction that gave rise to the tax benefit at issue in this case; and, if so, what reasons and legal authorities support this contention?

Response to Interrogatory No. 18:

*The United States contends that the sale of the Preferred Stock to Lehman, as well as Charter's assumption of the contingent liabilities, gave rise to the tax benefit at issue in this case. The assumption of the contingent liabilities that occurred as part of the Exchange created the artificially inflated basis in the Preferred Stock. In turn, the sale of that stock to Lehman permitted WFC to recognize the capital loss deduction that was the purpose for this abusive tax shelter transaction. See Coltec Industries v. United States, 454 F.3d 1340, 1358 (Fed. Cir. 2006).*

Interrogatory No. 19. Assuming the transfer of the real estate assets to Charter resulted in less restrictive regulatory supervision of the real estate assets, does Defendant contend that such change did not constitute a non-tax business purpose; and, if so, what reasons and which facts and evidence support this contention?

Response to Interrogatory No. 19:

*The United States objects to Interrogatory No. 19 on the grounds that it calls for speculation as to a hypothetical scenario.*

Interrogatory No. 20. Does Defendant contend that the Exchange lacked economic substance; and, if so, what reasons and which facts and evidence support this contention?

Response to Interrogatory No. 20:

*Yes. That part of Interrogatory No. 20 that seeks facts and evidence supporting that contention is a contention interrogatory within the meaning of Rule 33 of the Federal Rules of Civil Procedure, and the United States cannot meaningfully respond to the interrogatory until the conclusion of discovery. In particular, the facts and evidence supporting such contention depends on expert analysis that is not yet complete. The United States will supplement its response in due course.*

*Also, Plaintiff claims that the Transaction resulted in WFC incurring a pre-tax loss of approximately $423 million. The United States has seen no evidence indicating that this loss*

*was not an expected result of the Transaction. Thus, the Transaction (including the Exchange and the Preferred Stock sale to Lehman) must lack economic substance because it was not reasonably expected to result in a pre-tax profit for WFC.*

Interrogatory No. 21. Does Defendant contend that WFC's sale of Preferred Stock to Lehman lacked economic substance; and, if so, what reasons and which facts and evidence support this contention?

Response to Interrogatory No. 21:

*Yes. That part of Interrogatory No. 21 that seeks facts and evidence supporting that contention is a contention interrogatory within the meaning of Rule 33 of the Federal Rules of Civil Procedure, and the United States cannot meaningfully respond to the interrogatory until the conclusion of discovery. In particular, the facts and evidence supporting such contention depends on expert analysis that is not yet complete. The United States will supplement its response in due course.*

*Also, Plaintiff claims that the Transaction resulted in WFC incurring a pre-tax loss of approximately $423 million. The United States has seen no evidence indicating that this loss was not an expected result of the Transaction. Thus, the Transaction (including the Exchange and the Preferred Stock sale to Lehman) must lack economic substance because it was not reasonably expected to result in a pre-tax profit for WFC.*

Interrogatory No. 22. If Defendant contends that the Transaction, or any part of the Transaction, lacked economic substance, does Defendant contend that the Transaction, or any part of the Transaction, should be treated as not having occurred; and, if so, what reasons and which facts and evidence support this contention?

Response to Interrogatory No. 22:

*The United States contends that if the Transaction or any part thereof lacks economic substance, then Plaintiff's claimed capital loss deduction must be disallowed, because tax deductions from transactions that are substantive shams are not allowed.*

Interrogatory No. 23. If Defendant's response to interrogatory 22 is in the affirmative, how does Defendant contend the real economic changes effectuated by the Transaction (including, for example, the transfer of assets and liabilities to Charter and the sale of stock to an unrelated third party) should be treated for federal tax purposes; and on the basis of what reasons and legal authorities does Defendant base this contention?

Response to Interrogatory No. 23:

*Not applicable.*

- 8 -

Interrogatory No. 24. Does Defendant contend that the step-transaction doctrine should operate to preclude Plaintiff from being entitled to a capital loss; and, if so, what reasons and which facts and evidence support this contention?

Response to Interrogatory No. 24:

*The United States is still considering its position with respect to the application of the step-transaction doctrine. That part of Interrogatory No. 24 that seeks facts and evidence supporting that contention is a contention interrogatory within the meaning of Rule 33 of the Federal Rules of Civil Procedure, and the United States cannot meaningfully respond to the interrogatory until the conclusion of discovery. The United States will supplement its response in due course.*

Interrogatory No. 25. If Defendant's answer to Interrogatory No. 24 is in the affirmative, which specific transactions does Defendant contend should be disregarded or combined under the step-transaction doctrine; and what reasons and which facts and evidence support this contention?

Response to Interrogatory No. 25:

*See the United States' response to Interrogatory No. 24.*

Interrogatory No. 26. Does Defendant contend that there are no circumstances under which the inclusion of an unrelated investor in the capital structure of a property management company could constitute a non-tax business purpose for federal tax purposes; if not, under what circumstances would such a non-tax business purpose exist?

Response to Interrogatory No. 26:

*The United States objects to Interrogatory No. 26 on the grounds that it calls for speculation and on the grounds that it is overly broad.*

Interrogatory No. 27. Does Defendant contend that WFC did not reasonably expect to increase its profitability by undertaking the Transaction; and, if so, what reasons and which facts and evidence support this contention?

Response to Interrogatory No. 27:

*See the United States' response to Interrogatory No. 20.*

Interrogatory No. 28. If the Transaction actually resulted in cost savings for WFC, does Defendant contend that such cost savings do not corroborate WFC's expectation, at the time of the Transaction, that the Transaction would increase WFC's profitability; and, if so, what

reasons and which facts and evidence support this contention?

Response to Interrogatory No. 28:

*The United States objects to Interrogatory No. 28 on the grounds that it calls for speculation as to a hypothetical scenario.*

Interrogatory No. 29. Does Defendant contend that KPMG's 1998 valuation (as reflected in WFP-03744) of the real estate assets transferred to Charter in the Exchange was not a reasonable valuation; and, if so, what reasons and which facts and evidence support this contention?

Response to Interrogatory No. 29:

*The United States' answer to Interrogatory No. 29 depends on expert analysis that is not yet complete. The United States will provide a full response to Interrogatory No. 29 either during or at the conclusion of expert discovery.*

Interrogatory No. 30. If Defendant's response to Interrogatory No. 29 is in the affirmative, what does Defendant contend is the value, or reasonable range of values, of the real estate assets; and, which facts and evidence support this contention?

Response to Interrogatory No. 30:

*See the United States' response to Interrogatory No. 29.*

Interrogatory No. 31. Does Defendant contend that BearingPoint's calculation, as of December 31, 2006 (as reflected in WFP3-09587) of the reduction, since December 17, 1998, in losses arising with respect to the real estate assets is not a reasonable calculation of such reduction; and, if so, what reasons and which facts and evidence support this contention?

Response to Interrogatory No. 31:

*See the United States' response to Interrogatory No. 29.*

Date: November 17, 2008

                                      FRANK J. MAGILL, JR.
                                      United States Attorney

                                      /s/ Thomas P. Cole
                                      THOMAS P. COLE (NJ Bar #3146-1994)
                                      GREGORY E. VAN HOEY (MD Bar)
                                      JACQUELINE C. BROWN (NY Bar)
                                      Trial Attorneys, Tax Division
                                      U.S. Department of Justice
                                      Post Office Box 55
                                      Washington, D.C. 20044
                                      Telephone: (202) 514-9611

IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MINNESOTA

| | |
|---|---|
| WFC HOLDINGS CORP., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil No. 07-cv-3320-JRT-FLN |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Defendant. ) | |

## CERTIFICATE OF SERVICE

IT IS HEREBY CERTIFIED that service of the UNITED STATES' RESPONSES TO PLAINTIFF'S FIRST SET OF REQUESTS FOR ADMISSIONS TO THE UNITED STATES OF AMERICA and UNITED STATES' OBJECTIONS AND RESPONSES TO PLAINTIFF'S FIRST SET OF INTERROGATORIES TO THE UNITED STATES OF AMERICA has been made upon the following by Federal Express this 17th day of November, 2008, and by sending it to the below listed e-mail addresses:

> Mr. Philip Karter, Esq.
> Chamberlain Hrdlicka
> 300 Conshohocken State Road, Suite 570
> West Conshohocken, PA 19428
>
> E-Mail addresses:
>
> mark.a.hager@wellsfargo.com
> pkarter@chamberlainlaw.com
> hodell@chamberlainlaw.com
> jprokup@chamberlainlaw.com
> jeffrey.sloan@wellsfargo.com
>
> /s/ Gregory E. Van Hoey
> GREGORY E. VAN HOEY
> Trial Attorney, Tax Division
> U.S. Department of Justice
> Post Office Box 7238
> Ben Franklin Station
> Washington, D.C. 20044
> Telephone: (202) 307-6391